R. A. CURTIS, Respondent, v. FRANK BALES, Appellant.

In the Kansas City Court of Appeals, May 22, 1922.

1. **INSTRUCTIONS: An Instruction Not Supported by Evidence is Erroneous.** In an action to recover an architect's fee for preparation of plans and specifications for a garage which were to be approved by the defendant and the proposed tenant which was to occupy the same when constructed and ready for occupancy, an instruction submitting the question of approval by prospective tenant was erroneous where the evidence showed that before prospective tenant had an opportunity to pass upon plans and specifications the project was abandoned by defendant.

2. ————: **Singling Out Evidence: Harmful Comment: Instruction Singling Out Part of Testimony and Containing Harmful Comment Held Erroneous.** In an action by an architect to recover compensation for drawing plans and specifications, an instruction that if defendant refused to examine the plans to determine whether they were satisfactory to him, then the fact that they were not approved by defendant is no defense, *held*, erroneous as singling out part of testimony and containing a harmful comment.

3. **CONTRACTS: Contention That Architect's Plans Were Worthless on Account of Manner in Which Heating Was to be Provided Under Them, Held, not Supported by the Evidence.** In an action to recover compensation for drawing plans and specifications, the contention that the same were worthless because they provided for city heat when the city heating pipes could not be connected with building until extended thereto, held not supported by the evidence.

4. ————: **Architect Held Entitled to Recover Compensation.** Where contract of architect provided that in case of abandonment of building project by owner after plans and specifications were pre-

pared and bids received that he should receive a fee of three and one-half per cent of the lowest bid, and the owner reserved the right to refuse to proceed further if, after bids were received, he found the cost of the building to be greater than a specified amount, the owner could not abandon the building without paying architect for his work, especially where the lowest bid was within the limit of cost.

5. ———: Failure of Owner to Secure Binding Construction Contract Held Not to Preclude Architect From Recovering Compensation. Where owner, after receiving bids, abandoned a building project, the fact that the bidder a few days after submitting his bid, wrote owner that the bid was subject to alteration to meet the change in the cost of material, did not preclude the architect from basing his commission on the bid as originally made as the failure to obtain a binding contract between owner and contractor was due to default of owner and his neglect to sign the contract.

Appeal from the Circuit Court of Jackson County.— Hon. Allen C. Southern, Judge.

REVERSED AND REMANDED.

R. M. Sheppard, for respondent.

Clarence L. Hogin and Ball & Ryland for appellant.

BLAND, J.—This is an action to recover an architect's fee. There was a verdict and judgment in favor of plaintiff in the sum of $3071.46, and defendant has appealed.

The petition alleges—

"Plaintiff states that on or about the —— day of April, 1919, the defendant employed him to prepare plans and specifications for a garage to be located and built in Kansas City, Missouri; that it was agreed that said plans and specifications should be prepared and approved by the defendant and also approved by the tenant which was to occupy the said premises when they were constructed and ready for occupancy.

Plaintiff states that in accordance with said agreement he prepared plans and specifications and submitted

the same to the defendant, and same were approved by the defendant, and same were submitted to the tenants who were to occupy the said premises, and said building erected and occupied and said plans and specifications were approved by said tenants."

The petition further alleges that in accordance with instructions from defendant plaintiff submitted the plans and specifications to various contractors for bids for the construction of the building and received bids therefor and that the lowest bid was for $87,756. It alleges that it was agreed between plaintiff and defendant that plaintiff should receive for preparing said plans and specifications "three and one-half (3½%) per cent of the price of the building to be erected under the plans and specifications, which in this case was three thousand seventy-one and 46/100 ($3,071.46) dollars;" that defendant refused to pay said sum of money and plaintiff prays judgment for said amount. The answer was a general denial. The court at the instance of plaintiff instructed the jury as follows:

"1. The court instructs the jury that if they find and believe from the evidence that on, or about the ——— day of May, 1919, the defendant employed the plaintiff to prepare plans and specifications for a garage building to be located and built in Kansas City, Missouri; that it was agreed that said plan should be prepared and approved by said defendant and by the J. R. Allen Mortgage Company, and the Kansas City Automobile Club, a proposed tenant for said building when the same was constructed; and it was agreed that if said building was not built that defendant would pay plaintiff 3½ per cent of the lowest bid.

And if you further find and believe from the evidence that plaintiff prepared plans and specifications for said building and the same were submitted to defendant and approved by him, and if you further find that said plans were submitted and approved by the Allen Mortgage Company; and if you further find that the plans and specifications were approved by the Kansas

City Automobile Club, or that the defendant abandoned the building of said garage without submitting said plans and specifications to the said Kansas City Automobile Club for their approval. If you so find, then you will find the issues in favor of the plaintiff; and assess his debt and damages at $3\frac{1}{2}$ per cent of the lowest bid with interest at the rate of 6 per cent per annum from the date of filing this suit.''

''2. The court instructs the jury that if they find and believe from the evidence that the defendant refused to examine the plans to determine whether or not they were satisfactory to him, then the fact that they were not approved by the defendant is not any defense in this case.''

The facts show that on May 26, 1919, defendant submitted by letter a proposition to the chairman of the building committee of the Kansas City Automobile Club, which was seeking a down town garage building for its members. Defendant proposed that he would build a four-story fire-proof garage on premise owned by himself and his mother located at the southeast corner of Grand Avenue and Admiral Boulevard in Kansas City, Missouri, and lease the same to the club at a stipulated rental; that it was understood that the building should not cost in excess of $90,000, and that defendant should have time to have plans and specifications drawn and bids on the building secured and that ''if, after the securing of these bids, I find that the cost of the building is in excess of $90,000 none of the parties concerned are under any obligations to go further with the transaction.'' This proposal was accepted by the automobile club and the building committee was instructed to work out the details with defendant.

Sometime prior to the writing of the said letter defendant discussed with plaintiff, an architect in Kansas City, Mo., the subject of plaintiff's preparing plans and specifications for the garage building on the property mentioned. At that time plaintiff told defendant that he ''would charge the customary fees, for complete service

to be five per cent (5%) and if he (defendant) should abandon the work after the plans and specifications were prepared that the fee would be three and one-half (3½%) per cent . . . if he abandoned it after they (the bids) were received, three and one-half per cent of the lowest bid . . . for the total cost." Defendant agreed to this proposition and instructed plaintiff to prepare plans for the building. Plaintiff testified that the plans and specifications were to be approved by the defendant, the Kansas City Automobile Club, as the proposed tenant, and the J. R. Allen Mortgage Company, the representative of defendant.

After the plans were made and approved and bids were received defendant decided that he wanted a more pretentious and better building, one that could be used for other purposes after its use as a garage was at an end; also, he was not satisfied owing to the fact that the bids were not taken upon the building as a whole but that the contract was to be taken for the construction of the parts of the building while defendant desired the contract to be a general one for the building as a whole. Thereupon plaintiff prepared other plans and specifications to satisfy defendant which, after their preparation, were accepted by defedannt and the J. R. Allen Mortgage Company. Defendant thereupon instructed plaintiff to receive bids for the building to be constructed in accordance with the second set of plans and specifications.

A building committee of three members had been appointed by the Kansas City Automobile Club to have full authority to represent the club "on the new garage project." The members of this committee conferred with plaintiff from time to time during the drawing up of the first plans and specifications and agreed to those plans, but it is apparent from the testimony that before they had an opportunity to pass upon the second plans and specifications the project was abandoned by the defendant. Plaintiff contends that the automobile club passed upon the second plans and specifications. We do not

think that the record bears this out. The record does show that those plans and specifications were drawn to meet the previously expressed ideas of the members of the building committee of the club and upon their completion defendant instructed plaintiff to deliver them to the president of the club who was not a member of the building committee. They were delivered to the president who instructed plaintiff to turn them over to an architect for examination. Plaintiff testified .that the architect kept the plans for sometime when he told plaintiff that he had examined them and that they were satisfactory.

In accordance with defendant's directions plaintiff asked for bids for the building, which was to be constructed under the. second plans and specifications, and Lonsdale Brothers were the lowest bidders at the price of $87,756. After defendant saw the second plans and specifications and approved the same and instructed plaintiff to ask for bids, he left for his farm near Lees Summit, Missouri, before the bids were asked. After the bids were received plaintiff drew up a contract for the erection of the building and had it signed by Lonsdale Brothers and turned it over to Mr. Leonard of the J. R. Allen Mortgage Company, which represented the defendant, and mailed a copy of the blue prints and specifications and the bids to defendant. Defendant refused to receive the blue prints and specifications from the post office at Lees Summit until after suit was brought. He did not open the bids until the trial. The bids were received upon August 27th and on September 9th Lonsdale Brothers wrote defendant that their proposal of August 27th "is now subject to change to meet the advance in prices of materials since our proposal was submitted."

We think that defendant's contention that plaintiff's instruction No. 1 was erroneous is well taken. There is no evidence that the second plans and specifications were approved by the Kansas City Automobile Club as submitted in the instruction. [Champion Coated Paper Co.

v. Shilkee, 237 S. W. 109.] The evidence shows that
defendant abandoned the proposition before the building
committee of the automobile club had had an opportun-
ity to approve the second plans and specifications, and
the matter was dropped by the automobile club. The
most that plaintiff's evidence tends to show is that these
plans and specifications were drawn in accordance with
the previously expressed desires of the building com-
mittee, but he, in his testimony, recognizes the right of
both the defendant and the building committee to revise
their plans at any time before final approval. Plain-
tiff testified, "I had to satisfy Bales' wishes—for he
said to make them suit the club, I had to make them that
way. I was to prepare the plans and specifications satis-
factory to all of them." Plaintiff recognized the right
of defendant to have the first plans and specifications
changed even after they had been approved by all the
parties interested and bids had been received on them.

While defendant told plaintiff to deliver a copy of
the plans and specifications to the president of the auto-
mobile club and the president directed plaintiff to give
them to an architect for approval, there is nothing in the
evidence tending to show that the purpose of defendant's
having plaintiff turn them over to the president of the au-
tomobile club was anything more than to get them into the
possession of the club through its proper officers. There
is no evidence and no contention in fact that defendant
in having the plans and specifications turned over to the
president of the club waived the matter of having the
automobile club, through its properly constituted build-
ing committee, pass upon them. There is no evidence in
the record tending to show that the architect selected by
the president of the club had any authority to bind the
automobile club by his approval of the plans and speci-
fications submitted to him. The testimony of the archi-
tect shows the contrary. The record shows that no one
was authorized to approve these plans and specifications
except the building committee, which was composed of
three members of the club of which the president was

not one. We think that plaintiff's evidence falls short of showing that the second plans and specifications were approved by the properly constituted officials of the automobile club but on the contrary it shows that defendant abandoned the proposition of building the garage before the second plans and specifications were approved by the automobile club, thus preventing the club from approving them.

We think that plaintiff's instruction No. 2 was likewise erroneous. It suggested to the jury that the defense was defendant's refusal to examine the plans. Defendant testified that he refused to take the plans and specifications out of the post office; that he had not approved of them prior to that time. He admitted however that plaintiff showed him a pencil sketch of these plans and specifications but he testified that he did not understand them although, according to plaintiff's explanation of the pencil sketch, they met with his approval, but that after such explanation he could not say whether they conformed to his desires or not. This was not the only defense in the case. Defendant testified that the contract with plaintiff was that he was to pay plaintiff five per cent of the cost of the building and that unless the building was erected he was not liable to plaintiff for any amount, that it was understood that he had a right, in accordance with his agreement with the automobile club, to abandon the proposition of building the garage at any time; that on account of the rising price of materials he did abandon the construction of the building and leased the ground to other persons.

One of the defenses was that the plans were worthless for the reason that they provided for city heat when the city heating pipes did not come closer than one block of the proposed building, a matter which will hereinafter be discussed. We think that under the circumstances plaintiff's instruction No. 2 singles out parts of the testimony and contains a harmful comment. [Champion Coated Paper Co. v. Shilkee, supra; James v. Ins. Co., 135 Mo. 247.]

As this case will undoubtedly be retried, it is proper for us to pass upon such other matters raised by the defendant that will probably again arise. It is insisted that his demurrer to the evidence should have been sustained. In this connection it is said that the plans and specifications were worthless on account of there being no adequate provision for heating the building. The city heating company was a public utility corporations distributing heat in the business section of the city through pipes laid under streets and alleys. The testimony shows that prior to the drawing of the plans plaintiff interviewed the representatives of the city heating company but did not ascertain whether or not the pipes of the heating company ran to the proposed building. It seems that none of the parties were aware of this fact in relation to the location of the pipes until the day before the trial when it was ascertained by one of defendant's attorneys. This was long after defendant had refused to pay plaintiff. Defendant testified that the fact that the heating pipes did not extend to the street next to his lot was not considered when he abandoned the idea of building the garage. Plaintiff testified that before preparing the plans he talked to defendant in reference to the heating plant and that defendant made suggestions to him about "what plaintiff should specify" as to heat but that he did not remember what that was; that defendant did not request that the heating plant be in the building itself. Plaintiff testified that his instructions were to make his plans and specifications so as to connect with the city heat. He was not asked who gave him the instructions but the inference from the record is that such instructions were given him by members of the building committee of the automobile club. One of the members of the building committee testified that he talked to plaintiff in relation to heating the building; that the question was discussed about the source of the heat, whether from the city heating plant or for a plant in the building but the witness did not remember what were the details of the discussion.

The evidence shows that defendant's instruction to plaintiff was that "they (the automobile club) will have more to say about the kind of building they want than I will—it will be largely up to them." Under plaintiff's contract with defendant it was necessary for him to draw his plans and specifications to meet the approval of the automobile club. The evidence shows that although defendant examined the plans and specifications he did not object to the plans on the ground that they provided a heating plant to connect with the city heating pipes. The evidence does not show whether or not the city heating company would have extended its pipes to this building, or, if so, upon what terms, but it does show that the owner of the building could not well have offered to have the pipes extended to the street adjacent to his building. No doubt the facts in relation to this matter will be developed at the next trial but in view of the fact that plaintiff was instructed to draw the plans in the manner he did and in the light of all the evidence we can not say at this time that defendant is in a position to contend that the plans and specifications were worthless on account of the manner in which the heating was to be provided under them.

There is no merit in the contention that defendant had a right at any time to abandon the building of the garage without paying plaintiff for his work. Although plaintiff had knowledge of the proposal made by defendant to the automobile club, plaintiff's contract with defendant was not inconsistent with the proposal, for the latter provided that in case of the abandonment of the proposal by the defendant after the plans and specifications were prepared and approved he should pay plaintiff a fee of three and one-half per cent of the lowest bid for the total cost. The proposal was to the effect that defendant reserved the right to refuse to proceed further with the matter in hand in case, *after the plans and specifications were made and bids received,* he found the cost to be greater than $90,000.

While Lonsdale Brothers submitted the lowest bid on August 27th and on September 9th wrote defendant a letter stating that their bid was subject to alteration to meet the change in the cost of material since the bid was submitted, and plaintiff knew of this letter prior to his filing of this suit, we do not think that plaintiff by reason of these facts may not base his compensation upon three and one-half per cent of this bid as "the lowest bid." The facts show that Lonsdale Brothers signed a contract to erect the building under their original bid. This contract never became binding between defendant and Lonsdale Brothers on account of the default of defendant. If defendant had executed the contract on his part when the same was mailed to him, Lonsdale Brothers could not have withdrawn their bid or insisted upon a greater amount of compensation. It was due to the neglect of the defendant that the contract was not entered into with Lonsdale Brothers, the lowest bidder. It would appear, in view of the letter of Lonsdale Brothers of September 9th that the bid they originally made was even lower than the "lowest bid" that could have been procured at that time, for the reason that the letter shows, as well as the testimony of the defendant, that the price of material was constantly increasing from the time the bid was submitted. We fail to see how defendant could be harmed by plaintiff's basing his recovery upon the three and one-half per cent of the original bid of Lonsdale Brothers.

The judgment is reversed an the cause remanded. All concur.